**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MARISELA VALDEZ HUERTA,** ) | |
| **CINDY ALEJANDRA CABRERA HUICHO,** ) | |
| **ISY ELIZABETH GONZALEZ** ) | |
| **VALENZUELA, PERLA YASMIN** ) | |
| **LAGARDA HUERTA, MARTA ICELA** ) | **Civil Action No. _____** |
| **FLORES GAXIOLA, MIRIAM JOHANA** ) | |
| **MENDIVIL TALAMANTE, AURORA** ) | |
| **MENDIVIL ARMENTA,** ) | **COMPLAINT** |
| ) | **AND JURY DEMAND** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **L.T. WEST, INC., JAMES CRAIG WEST,** ) | |
| **LUCAS TROY WEST, CATHERINE WEST,** ) | |
| **JOHN DOE 1,** ) | |
| **JOHN DOE 2,** ) | |
| ) | |
| **Defendants.** ) | |

**COMPLAINT**

1.      This is an action by seven migrant workers (collectively, "Plaintiffs") who were employed by Defendants L.T. West, Inc. ("L.T. West"), James Craig West ("Craig West"), Lucas Troy West ("Troy West"), and Catherine West ("Catherine West"), collectively, the "West Defendants," to clean, shell, and package crawfish at L.T. West in Mamou, Louisiana.  The West Defendants recruited Plaintiffs to come to Louisiana from Mexico to perform farm labor pursuant to the federal government's H-2A guestworker program.   Under that program, employers may petition to bring foreign workers to the United States on temporary visas.

2.      The H-2A program requires participating employers to comply with minimum standards governing terms and conditions of employment for guestworkers, including the number of hours to be worked and the specified wage rate.  The West Defendants failed to

1

comply with those standards.  Instead, the West Defendants subjected Plaintiffs, all of whom are Hispanic, specifically, Mexican, to abusive working and living conditions, including racial harassment, confiscation of personal identity documents, including passports and visas, and flagrant violations of federal wage requirements.

3.      In addition, five of the Plaintiffs, Marisela Valdez Huerta ("Valdez Huerta"), Cindy Alejandra Cabrera Huicho ("Cabrera Huicho"), Isy Elizabeth Gonzalez Valenzuela ("Gonzalez Valenzuela"), Perla Yasmin Lagarda Huerta ("Lagarda Huerta"), and Miriam Johana Mendivil Talamante ("Mendivil Talamante"), were subjected to forced labor by Defendants L.T. West and Craig West.  Defendants L.T. West and Craig West subjected these five Plaintiffs to a scheme of surveillance, threats of serious harm, intimidation, and abuse of legal process, in order to maintain control over them.  Defendants L.T. West and Craig West also prohibited them from leaving the L.T. West premises without permission, threatened them with unlawful arrest and deportation, and in fact did have those Plaintiffs that left L.T. West without permission unlawfully detained by Defendants John Doe 1 ("Doe 1") and John Doe 2 ("Doe 2") at the Mamou Police Department.  These five Plaintiffs had no choice but to continue to labor for L.T. West and Craig West, even though they wanted to change the conditions of their forced labor.

4.      Plaintiffs bring this action to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA"), the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), federal civil rights laws, the Louisiana Constitution, and Louisiana contract and tort law.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595(a) (TVPRA), 28 U.S.C. § 1343 (civil rights), and 29 U.S.C. § 216(b) (FLSA).

6.      The Court has supplemental jurisdiction over Plaintiffs' Louisiana state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and Defendants L.T. West, Craig West, Troy West, and Catherine West reside in this District.

## PARTIES

8.      Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, Mendivil Talamante, Marta Icela Flores Gaxiola ("Flores Gaxiola"), and Aurora Mendivil Armenta ("Mendivil Armenta") are each Hispanic and a citizen of Mexico and were lawfully admitted to the United States as agricultural guestworkers on temporary work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A visa").

9.      Plaintiffs were employed by the West Defendants at L.T. West through the H-2A visa program, from early April to late May 2011.

10.     At all relevant times, each Plaintiff was an employee of the West Defendants as that term is defined in the FLSA, 29 U.S.C. § 203(e).

11.     At all relevant times, Plaintiffs were engaged in the production of goods for commerce.

12.     Defendant L.T. West is a corporation organized under the laws of Louisiana with its principal place of business in Mamou, Louisiana, which is in Evangeline Parish.  Defendant

3

L.T. West has also done business as "Troy or Craig West Farms."  Defendant L.T. West raises, produces, and packages crawfish for sale in interstate commerce

13.    Defendant Craig West resides in Mamou, Louisiana.  Defendant Craig West is an owner and director of L.T. West.

14.    Defendant Troy West resides in Mamou, Louisiana.  Defendant Troy West is an owner and director of L.T. West.

15.    Defendant Catherine West resides in Mamou, Louisiana.  On information and belief, Defendant Catherine West acts as a manager of L.T. West.

16.    Defendant "John Doe 1" is a police officer with the Mamou Police Department. He is sued in his individual capacity.  When Defendant Doe 1's true name is discovered, Plaintiffs will seek to amend their complaint to insert his name.

17.    Defendant "John Doe 2" is a police officer with the Mamou Police Department. He is sued in his individual capacity.  When Defendant Doe 2's true name is discovered, Plaintiffs will seek to amend their complaint to insert his name.

18.    At all times relevant to this action, the West Defendants acted as "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

## STATEMENT OF FACTS

**A.  L.T. West's Contract With Plaintiffs**

19.    In approximately November 2010, Defendant L.T. West, under the name "Troy or Craig West Farms," petitioned the United States Department of Labor ("USDOL") for certification to employ temporary foreign workers.  The petition was filed pursuant to 8 U.S.C. § 1188(i)(2), which provides statutory authorization for what is commonly referred to as the "H-2A" program.

20.     Under the H-2A program, an agricultural employer in the United States may recruit and employ non-immigrant foreign workers to perform agricultural labor of a temporary nature if USDOL certifies that:  (a) there are insufficient available U.S. workers to perform the work, and (b) the employment of foreign workers will not adversely affect the wages and working conditions of similarly-situated U.S. workers.  8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).  Foreign workers admitted in this fashion are usually referred to as "H-2A workers."

21.     All employers seeking admission of H-2A workers must file a temporary labor certification application with USDOL.  The application must include a job offer, commonly referred to as a "clearance order," that complies with the USDOL regulations governing the H-2A program (the "H-2A Regulations").  20 C.F.R. § 655.121(a)(1).  The clearance order contains the employer's certification that it will comply with the H-2A Regulations, including those regarding the minimum wages, benefits, and working conditions that H-2A employers are required to offer to all H-2A workers imported and employed.

22.     Like all H-2A employers, L.T. West's clearance order, attached as Exhibit A, explicitly incorporated the H-2A Regulations and contained a certification that the West Defendants would:

- pay workers wages at least equal to the applicable Adverse Effect Wage Rate, 20 C.F.R. § 655.122(l);

- offer workers at least three-fourths of the workdays of the contract period and, if this guarantee was not met, pay them the amount they would have earned had the guarantee been fulfilled, 20 C.F.R. § 655.122(i);

- provide workers with a copy of the work contract (*i.e.* clearance order) with all terms and conditions of employment no later than the time they apply for a visa, 20 C.F.R. § 655.122(q);

- provide workers with hours and earnings statements that provide certain information including total pay for the pay period, applicable pay rates, hours offered to the worker, and the hours actually worked, 20 C.F.R. § 655.122(k);

- furnish housing that complies with applicable health and safety standards, 20 C.F.R. 655.122(d);

- not hold or confiscate workers' passports, visas, or other immigration documents, 20 C.F.R. § 655.135(e); and

- comply with all applicable federal and state employment-related laws and regulations, 20 C.F.R. §§ 655.135(e) and 653.501(d)(2)(xii).

23.    Pursuant to 20 C.F.R. § 655.122(q), L.T. West's clearance order served as the employment contract between L.T. West and all H-2A workers it employed, including Plaintiffs. The clearance order includes the USDOL regulations at 20 C.F.R. § 655 Subpart B, including the terms described in Paragraph 22 as contractual terms.

24.    The West Defendants guaranteed, in Plaintiffs' USDOL-certified H-2A employment contract (or clearance order), that they would offer Plaintiffs at least forty (40) hours of work per week for the length of the contract period, running from the date of Plaintiffs' arrival at the worksite until November 25, 2011, and would pay Plaintiffs a wage rate of at least $9.10 per hour for Plaintiffs' labor, which was the Adverse Effect Wage Rate in Louisiana established by the USDOL.  Exhibit A at 1.

**B.  Recruitment of Plaintiffs**

25.    Through two of its employees and agents, Maritza Pava ("Pava") and her mother, Leocadia (who also went by the name and is referred to herein as "Caya"), Defendant L.T. West recruited the Plaintiffs, who are indigent, migrant farmworkers from Los Mochis, Sinaloa, Mexico to fill the positions certified by the USDOL and described in Defendant's clearance order.  L.T. West, through Pava and Caya, told Plaintiffs that they would earn approximately $450 each week while working at L.T. West.

26.    In order to secure employment with L.T. West, Plaintiffs each took out loans to pay for obtaining their passports and/or to cover travel and other costs related to their H-2A visas.

27.    On or about March 31, 2011, Pava transported Plaintiffs from Los Mochis, Sinaloa to Nogales, Sonora, to obtain H-2A visas to work at L.T. West.  Plaintiffs then returned to Los Mochis.  Pava, acting on behalf of L.T. West and Craig West, took Plaintiffs' visas and passports immediately after the United States Consulate in Nogales had issued Plaintiffs' visas.

28.    During this trip, Pava told Plaintiffs that Defendant Craig West had ordered her to confiscate Plaintiffs' visas and passports.  She also instructed Plaintiffs to listen to someone she identified as Edgar, one of Craig West's interpreters and agents, on her cellphone speakerphone. Through Pava's cellphone speakerphone, Edgar told Plaintiffs that Craig West had ordered Pava to take their visas and passports.

29.    On or about April 7, 2011, Pava transported Plaintiffs from Los Mochis, Sinaloa, Mexico to Mamou, Louisiana.  Pava distributed Plaintiffs' passports and visas to Plaintiffs before arriving at the U.S. border, but after clearing U.S. Customs and Border Patrol, per Defendant Craig West's direction, Pava again confiscated Plaintiffs' passports and visas.

30.     On or about April 9, 2011, Plaintiffs arrived at the L.T. West premises to begin working pursuant to their H-2A contracts.

**C.  Wage and Hour Violations**

31.     At all times from April to May 2011, each Plaintiff complied with all material terms of her H-2A employment contract with the West Defendants.

32.     Defendant Craig West supervised Plaintiffs' work at the L.T. West plant and was responsible for paying Plaintiffs on a weekly basis.

33.     Defendant Catherine West was responsible for documenting Plaintiffs' hours and the amount of crawfish cleaned and shelled by Plaintiffs and for paying Plaintiffs on a weekly basis.

34.     Defendant Troy West signed the clearance order, certifying that the clearance order described the actual terms and conditions of the job and the West Defendants agreed to comply with applicable H-2A Regulations, including those set forth in Paragraph 22.

35.     Despite the express terms of Plaintiffs' employment contract (the clearance order), the West Defendants paid Plaintiffs far less than $9.10 per hour and often less than the federal minimum wage of $7.25 per hour.  Some weeks, Plaintiffs made less than $4.00 per hour worked.  The West Defendants paid Plaintiffs lower wages than those to which they were entitled because they are Hispanic and Mexican.

36.     During the time Plaintiffs worked at L.T. West, the West Defendants did not pay them the Adverse Effect Wage Rate for all hours worked, as required by 20 C.F.R. § 655.102(b)(9).

37.     During the time Plaintiffs worked at L.T. West, the West Defendants did not pay them the minimum wage for all hours worked, as required by the FLSA, 29 U.S.C. § 206(a).

38.     During the time Plaintiffs worked at L.T. West, the West Defendants paid Plaintiffs for some work they performed according to a piece rate system.

39.     The West Defendants failed to supplement Plaintiffs' piece rate earnings as required by their employment contracts, 20 C.F.R. § 655.122(l)(2), so as to ensure that Plaintiffs' earnings for each pay period were at least equal to $9.10 per hour, the Adverse Effect Wage Rate.

40.     The West Defendants failed to supplement the piece rate earnings of Plaintiffs as required by the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), 29 C.F.R. § 776.5, so as to ensure that Plaintiffs' earnings for each pay period were at least equal to the minimum wage required by the FLSA.

41.     Though the West Defendants promised Plaintiffs in their employment contracts that they would be offered at least forty (40) hours of work per week, some weeks Plaintiffs were only offered as little as fifteen (15) hours of work.

42.     The West Defendants never provided Plaintiffs with a copy of the clearance order or any other form of employment contract.

43.     The West Defendants failed to provide Plaintiffs with complete hours and earnings statements.  Each week, the West Defendants paid Plaintiffs in cash.  The only pay records the West Defendants provided to Plaintiffs were receipts that listed the amount of cash Plaintiffs received each pay period.  Plaintiffs never received documentation that identified the applicable pay rates, hours offered, hours worked, or pieces produced, as required by the H-2A Regulations.

44.     Non-Hispanic employees who worked alongside Plaintiffs at L.T. West and performed substantially similar job duties were provided with more favorable terms and conditions of employment, including higher wages of several dollars more per hour.

**D. Housing Conditions**

45.     In addition to subjecting Plaintiffs to widespread wage violations, the West Defendants also forced Plaintiffs to live in unsanitary, substandard housing.

46.     Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante, who were the youngest female workers at L.T. West, were housed separately from the rest of the H-2A workers, in a trailer in an isolated area about half of a mile from the plant where they worked.

47.     The trailer was infested with insects and mice, and was very hot.  Potable water was not available.  The rooms inside the trailer had an offensive odor, similar to the smell of decomposing animals.  The West Defendants failed to remove trash that accumulated outside the trailer, which rotted and attracted insects and animals.  These conditions violated applicable H-2A Regulations governing worker housing.

48.     The rest of the H-2A workers, including Plaintiffs Flores Gaxiola and Mendivil Armenta, lived in a house that was located closer to the plant.  The house was infested with insects and often toads or frogs and was very hot.  Potable water was not available.  These conditions violated applicable H-2A regulations governing worker housing.

49.     In addition to violating the applicable H-2A Regulations, Defendants L.T. West and Craig West subjected Plaintiffs to unsanitary and intolerable housing conditions because they are Hispanic and Mexican.

**E.  Restriction of Plaintiffs' Movement, Threats, and Intimidation**

50.     L.T. West is located in a remote, rural area, removed from shopping areas, places of worship, and residential communities.  It is approximately a twenty (20) minute drive to the nearest town.   Plaintiffs had no means of transportation and relied on L.T. West for transportation into town to buy groceries and other necessities for personal use.

51.     To ensure that Plaintiffs remained working at L.T. West for purposes of forced labor, Defendant Craig West forbade Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, Lagarda Huerta, and Mendivil Talamante from leaving the L.T. West worksite without his permission.

52.     Defendant Craig West frequently threatened Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta that if they left the L.T. West worksite without his permission, he would call the police (whom he stated to Plaintiffs were his friends) or "immigration" and have them arrested and/or deported back to Mexico.

53.     Defendant Craig West told Plaintiff Lagarda Huerta, Valdez Huerta, Cabrera Huicho, and Gonzalez Valenzuela that his son was a lawyer and if Plaintiffs left L.T. West without his permission, his son would have their visas cancelled.

54.     Defendant Craig West communicated to Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta that he had friends who were police officers and, as a result, they needed to follow his orders not to leave L.T. West or he would have them arrested.   On multiple occasions, Plaintiffs saw Defendant Craig West socializing with law enforcement officers at L.T. West and, on one occasion, Defendant Craig West brought an officer in uniform to the trailer where Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera

Huicho, and Lagarda Huerta lived and communicated to them the officer was a friend who was watching over them.

55.     On various occasions, Defendant Craig West communicated to Plaintiffs that he was monitoring L.T. West, including their living quarters, with cameras.

56.     Defendant Craig West regularly intimidated and threatened Plaintiffs by emphasizing to them that as Hispanics and Mexicans, they were especially vulnerable to harm, should they disobey his orders – threatening, for example, to Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta that if they left L.T. West's worksite and employ, they would be harmed or killed because there were "bad Americans" who would hurt "Mexican ladies."

57.     In early May 2011, Defendant Craig West threatened Plaintiffs Valdez Huerta and Lagarda Huerta with a gun and told them never to leave the work camp.  In the presence of these two Plaintiffs, Defendant Craig West pointed the gun at the trailer where Plaintiffs Gonzalez Valenzuela and Cabrera Huicho were sleeping.  Defendant Craig West then, in the presence of Plaintiff Lagarda Huerta, pointed the gun directly at Plaintiff Valdez Huerta and shone the red beam of the laser scope of his gun on her face.

58.     Defendant Craig West held Plaintiffs passports and H-2A visas, and denied them access to these documents.  Defendant Craig West told Plaintiffs and other H-2A workers at L.T. West that they could not keep their own documents because the documents belonged to him. Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante reasonably feared that if they left L.T. West without their immigration documents, they would be arrested, deported, or detained by U.S. authorities.

59.     At one point, concerned about their lack of wages, Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, and Lagarda Huerta asked one of Craig West's interpreters and agents named José if they could leave L.T. West's employment.   After consulting with Defendant Craig West, José responded that Craig West would decide when Plaintiffs would be permitted to leave.

60.     In order to exert even further control over Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho and Lagarda Huerta, Defendant Craig West terrorized them.   He used racial and sexual intimidation and threats to emphasize his power over them and his ability to harm them if they attempted to leave his employment.

61.     Defendant Craig West frequently told Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta that they were "his Mexican ladies," that they were "his property," that they "belonged to him," that they were not permitted to speak to other people, and that they were not permitted to receive male visitors at their trailer at L.T. West.

62.     Defendant Craig West frequently asserted his control over Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta by unexpectedly entering their trailer, which did not have a lock on one of the doors, when these Plaintiffs were in vulnerable situations, including while they were getting dressed.  Craig West would stare at these Plaintiffs as they were dressing.

63.     Defendant Craig West frequently entered the trailer and told Plaintiffs Valdez Huerta and Lagarda Huerta to remove their clothing.  He often said "mucho booby," "mexicanas mucho booby," or "sexy" as he told them to remove their clothing, also gesturing for them to lift their shirts.  On at least one occasion, Defendant Craig West offered Plaintiff Valdez Huerta

money to disrobe. On another occasion, Defendant Craig West offered Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela, and Cabrera Huicho money to dance for him.

64.     Defendant Craig West, through his interpreter and agent José, told Plaintiff Cabrera Huicho, that accepting his propositions and the money that came with them would be the only way they could get out of poverty, knowing that she would communicate this information to the other Plaintiffs, because they were friends and lived together. Plaintiff Cabrera Huicho did, in fact, tell Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante what Craig West had said.

65.     In addition, Craig West, through his interpreter and agent José, told Plaintiff Lagarda Huerta that he had enough money to make them all "drop their panties," which she communicated to Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Mendivil Talamante.

66.     On one occasion, when Plaintiff Valdez Huerta was working at the L.T. West plant, Defendant Craig West told her to go to a freezer located away from the main work area. Once they were out of sight of the other workers, Defendant Craig West demanded that Plaintiff Valdez Huerta lift her shirt and show him her breasts. Plaintiff Valdez Huerta refused.

67.     Another time, Defendant Craig West entered the trailer when Plaintiff Valdez Huerta was dressing. He approached her and pulled on the drawstrings of her pants. Plaintiff Valdez Huerta attempted to stop him and deflect his advances. During this incident, Defendant Craig West intended to make contact with Plaintiff Valdez Huerta and Plaintiff Valdez Huerta found the contact harmful and offensive.

68.     Several times during her employment when Plaintiff Lagarda Huerta was working at the L.T. West plant, Defendant Craig West approached her from behind, placed his hands on

her ribs, and rubbed her.  Plaintiff Lagarda Huerta responded by attempting to move away from Defendant Craig West.  During these incidents, Defendant Craig West made contact with Plaintiff Lagarda Huerta's body and Plaintiff Lagarda Huerta found the contact harmful and offensive.

69.    On one occasion when Plaintiff Gonzalez Valenzuela was at the L.T. West office, Defendant Craig West told her that his wife was away and asked her to come to his house that night, which Plaintiff Gonzalez Valenzuela understood to be a sexual proposition.  Plaintiff Gonzalez Valenzuela refused, but later that day, Defendant Craig West again told her she should come to his house for "mucho money."

70.    On one occasion, when Plaintiff Cabrera Huicho was working at the L.T. West plant, Defendant Craig West instructed her to come with him to the office.  After they were inside, Defendant Craig West sexually propositioned her.  Though Plaintiff Cabrera Huicho understood Defendant Craig West, she repeatedly told him "no comprendo," ("I don't understand"), hoping that he would leave her alone.

71.    During this incident, Defendant Craig West rubbed Plaintiff Cabrera Huicho's arm and shoulder, without her consent, as he spoke to her.  Defendant Craig West made contact with Plaintiff Cabrera Huicho's body and Plaintiff Cabrera Huicho found the contact harmful and offensive.

72.    A few days after this incident, Plaintiff Cabrera Huicho was told that Defendant Craig West's interpreter and agent José needed to see her urgently at the L.T. West plant.  When Plaintiff Cabrera Huicho arrived at the plant, she saw Craig West through a glass partition in the plant's office.  José told Plaintiff Cabrera Huicho that she could make a lot of money if she would go out with Defendant Craig West, which Cabrera Huicho understood to mean have sex

with him.  When Plaintiff Cabrera Huicho declined, José told her that the only way she could get out of poverty would be to accept Craig West's offer.

73.    Defendants L.T. West and Craig West restricted Plaintiffs' movement and subjected them to threats, intimidation, and harassment because they are Hispanic and Mexican.

74.    Non-Hispanic employees who worked alongside Plaintiffs at L.T. West and performed substantially similar job duties were subjected to different and more favorable terms and conditions of employment, including the liberty to leave L.T. West when they wanted, such as on days when workers were paid on a piece rate basis and production of crawfish was slow, and being paid higher hourly wages for substantially similar job duties.

75.    Defendant Craig West's abusive conduct caused Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta to live in a constant state of fear throughout the time they were employed at L.T. West.

76.    Through his abusive conduct as described herein, Defendant Craig West intended to cause Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta severe emotional distress in order to ensure they felt intimidated and threatened.

77.    Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante reasonably believed that Defendant Craig West's actions and statements were threatening, reasonably believed that Defendant Craig West would inflict serious harm on them if they attempted to leave his employ, and felt forced to continue to work at L.T. West, despite abusive working conditions, irregular work, low wages, and terrible living conditions.

**1.    Plaintiff Mendivil Talamante's Illness and Forced Return to Work**

78.    On approximately April 15, 2011, Plaintiff Mendivil Talamante became sick and lost consciousness while processing crawfish in the L.T. West processing shed.  Co-workers

16

carried Plaintiff Mendivil Talamante to Defendant Craig West's office and called Plaintiff Mendivil Talamante's mother, who lives in Lafayette, Louisiana, for help.

79.     When her mother arrived at L.T. West, Plaintiff Mendivil Talamante asked Defendant Craig West, through an interpreter, to return her passport and H-2A visa, so that she could present an identity document at a clinic or hospital to seek medical care.  Defendant Craig West gave Plaintiff Mendivil Talamante only a copy of her passport and H-2A visa and withheld the originals.

80.     Though she felt too sick to continue working, Plaintiff Mendivil Talamante returned to work at L.T. West on April 18, 2011, because she reasonably believed that she could suffer serious harm, including arrest or deportation to Mexico, if she tried to leave L.T. West's employ without her identity documents.

81.     The following day, Plaintiff Mendivil Talamante again became ill while peeling crawfish in the L.T. West packing shed.  Again, co-workers contacted her mother for help. When Plaintiff Mendivil Talamante's mother and her mother's boyfriend arrived from Lafayette, they asked Defendant Craig West to help them get medical treatment for Plaintiff Mendivil Talamante.  Defendant Craig West refused.  Mendivil Talamante's mother and her boyfriend then asked him to give Plaintiff Mendivil Talamante her original passport and visa so that they could take her to a hospital or clinic and get medical treatment.

82.     Defendant Craig West became angry at this request and demanded the driver's licenses of Plaintiff Mendivil Talamante's mother and her boyfriend.  Defendant Catherine West made copies of the driver's licenses and Defendant Craig West wrote down the license plate number of Plaintiff Mendivil Talamante's mother's car.

83.     Defendant Craig West then angrily gave Plaintiff Mendivil Talamante her original passport and visa and stated that if her mother and her mother's boyfriend did not return Plaintiff Mendivil Talamante to work at his farm, he would send the police after them and accuse them of kidnapping her.  He reminded them that he had their driver's licenses and license plate information, as well as their home address.

84.     Plaintiff Mendivil Talamante was terrified by Defendant Craig West's threats to her family members and felt compelled to return to work as quickly as possible.

85.     In or about the second week of May 2011, Plaintiff Mendivil Talamante received a call while at her mother's house from Edgar, who identified himself as an interpreter for Defendant Craig West, calling on Defendant Craig West's behalf.

86.     Edgar told Plaintiff Mendivil Talamante that Defendant Craig West wanted her to return to work because there were many crawfish to be processed at the farm.  He told her that Defendant Craig West would send immigration or the police after her mother and her mother's boyfriend if she did not return to work.  He also told her Defendant Craig West would cancel her visa and have her deported to Mexico if she did not return to work.  He reminded her that Defendant Craig West had her mother's address and other "information."

87.     Plaintiff Mendivil Talamante told Edgar that she did not yet feel well enough to work.  Plaintiff Mendivil Talamante heard Edgar relaying her response to someone in English, whom she believed to be Defendant Craig West.  Edgar told Plaintiff Mendivil Talamante that she was committing a crime by leaving work at L.T. West because Defendant Craig West had sponsored her visa application.

88.     Though Plaintiff Mendivil Talamante felt very ill and did not feel well enough to work, she felt compelled to return to work for L.T. West as a result of Defendant Craig West's

threats of serious harm, deportation, and a police report.  She returned to work during the second week of May 2011.

89.     Upon her return to work, Plaintiff Mendivil Talamante informed Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, and Lagarda Huerta about the threatening phone call she received from Defendant Craig West's interpreter Edgar.

### 2.     Unlawful Arrests of Plaintiffs Valdez Huerta and Gonzalez Valenzuela

90.     In early May 2011, Plaintiff Gonzalez Huerta met Travis Manuel during a time that Defendant Craig West had allowed Plaintiffs to visit the local Walmart.

91.     Shortly thereafter, Plaintiff Gonzalez Valenzuela and Travis Manuel agreed to meet.  Plaintiff Gonzalez Valenzuela, accompanied by Plaintiff Valdez Huerta, met Travis Manuel, who was accompanied by his brother Trey Manuel, at the edge of the L.T. West worksite.  When Plaintiffs Gonzalez Valenzuela and Valdez Huerta saw a car approaching, and fearing that Defendant Craig West had followed them, Plaintiffs got into the Manuels' car and instructed the Manuels to drive.

92.     Defendant Craig West followed their car.  On information and belief, Defendant Craig West contacted the Mamou Police Department or an officer from the Mamou Police Department and requested that the individuals in the Manuels's car, including Plaintiffs Gonzalez Valenzuela and Valdez Huerta, be detained.

93.     Shortly after Plaintiffs Gonzalez Valenzuela and Valdez Huerta and the Manuels had left L.T. West, their car was pulled over by law enforcement officers.  Defendants Doe 1 and Doe 2, both Mamou Police Department officers, were on the scene.  Officers from the Evangeline Parish Sheriff's Office also came to the scene.

19

94.     On information and belief, Defendant Craig West, Defendant Doe 1, and Defendant Doe 2 conspired and reached an agreement that Defendants Doe 1 and Doe 2 would unlawfully detain Plaintiffs Gonzalez Valenzuela and Valdez Huerta solely for the purpose of harassing and intimidating them because they are Hispanic and Mexican, and threatening them that they would endure serious harm if they left L.T. West without Craig West's express permission.

95.     Plaintiffs Gonzalez Valenzuela and Valdez Huerta saw Defendant Craig West at the scene.  Defendant Craig West spoke to Defendant Doe 1, then came over to the Manuels's car, leaned down to look at Plaintiffs Gonzalez Valenzuela and Valdez Huerta through the car window, and shook his head "no" at them.

96.     Defendant Doe 1 removed Plaintiffs Gonzalez Valenzuela and Valdez Huerta from the Manuels's car and placed them in a Mamou Police Department vehicle.  Neither Defendant Doe 1 nor Defendant Doe 2 had probable cause for detaining, arresting, or taking custody of Plaintiffs Gonzalez Valenzuela or Valdez Huerta.

97.     Though Defendants Doe 1 and Doe 2 had no legal basis for taking Plaintiffs Gonzalez Valenzuela and Valdez Huerta into custody, pursuant to their agreement with Defendant Craig West, Defendant Doe 1 transported them to the Mamou Police Department and detained them for several hours.

98.     During the time Defendants Doe 1 and Doe 2 detained Plaintiffs Gonzalez Valenzuela and Valdez Huerta, they threatened and terrorized these Plaintiffs, causing them to fear for their safety.

99.     When at the police station, Defendant Doe 1 instructed Plaintiffs Gonzalez Valenzuela and Valdez Huerta to sit on a bench.  He pulled out a pair of handcuffs, waved them

in Plaintiffs Gonzalez Valenzuela and Valdez Huerta's faces, mimicked handcuffing them, and indicated that they would have to sleep handcuffed to the bench.

100.    Defendant Doe 1 produced a Taser gun or a similar weapon and waved it in Plaintiffs Gonzalez Valenzuela and Valdez Huerta's faces, and mimicked using the Taser gun or similar weapon on them.  He then discharged the weapon close enough to Plaintiffs Gonzalez Valenzuela and Valdez Huerta's faces that they could see blue electricity course through the gun.

101.    Defendant Doe 1 also made Plaintiffs Gonzalez Valenzuela and Valdez Huerta believe that they would be sent back to Mexico for leaving L.T. West without permission.  He waved his hand while saying "A Mexico, Mexico!" (which, in Spanish, means "To Mexico, Mexico!").

102.    Some time after Plaintiffs Gonzalez Valenzuela and Valdez Huerta arrived at the police station, Defendant Doe 2 arrived and spoke to Defendant Doe 1 about Plaintiffs.  While speaking to each other about Plaintiffs, Defendants Doe 1 and Doe 2 continuously laughed at them.

103.    After Plaintiffs Gonzalez Valenzuela and Valdez Huerta had been detained for a few hours, Defendant Craig West arrived at the police station.  At this time, Defendants Doe 1, Doe 2, and Craig West surrounded the bench on which Plaintiffs Gonzalez Valenzuela and Valdez Huerta were sitting by forming a semi-circle around them.  As Defendant Craig West and Defendant Doe 1 nodded in agreement, Defendant Doe 2 told Plaintiffs Gonzalez Valenzuela and Valdez Huerta they should not again leave L.T. West's premises because of the "gringos malos" who kill Mexicans.  As Defendant Doe 2 said this, he alternately pulled his finger across his throat as if he was cutting someone's neck, pointed his finger at Plaintiffs Gonzalez Valenzuela and Valdez Huerta, mimicked shooting them, and then pretended to shovel as if he were digging

a grave. Defendant Doe 2 also said that Plaintiffs Gonzalez Valenzuela and Valdez Huerta did not have permission to leave L.T. West's premises.

104. Neither Defendant Doe 1 nor Defendant Doe 2 followed appropriate procedures for a lawful arrest. Defendants Doe 1 and Doe 2 did not photograph Plaintiffs Gonzalez Valenzuela or Valdez Huerta, fingerprint them, tell them what, if anything, they were being detained for, and did not read them their *Miranda* rights.

105. During the time Defendants Doe 1 and Doe 2 detained Plaintiffs Gonzalez Valenzuela and Valdez Huerta, they intended to effect an extended restraint on their liberty. Throughout this time, Plaintiffs Gonzalez Valenzuela and Valdez Huerta believed they had to stay with Defendants Doe 1 and Doe 2 in the police station and would face physical harm or other serious consequences if they attempted to leave.

106. Finally, Defendant Craig West produced Gonzalez Valenzuela and Valdez Huerta's passports and visas and took Plaintiffs Gonzalez Valenzuela and Valdez Huerta back to L.T. West.

107. Following this incident, and on several occasions, Defendant Craig West further harassed and threatened Plaintiffs Gonzalez Valenzuela and Valdez Huerta by placing his fingers in front of his face like the bars on a jail cell, indicating that he would send them to jail if they left the L.T. West premises again without his permission.

108. Plaintiffs Gonzalez Valenzuela and Valdez Huerta told Plaintiffs Cabrera Huicho, Lagarda Huerta, and Mendivil Talamante about their detention by the Mamou Police Department and Defendant Craig West's involvement in their detention. This incident, along with Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, Lagarda Huerta, and Mendivil Talamante's continued dependence on the West Defendants for their present immigration status,

significantly heightened Plaintiffs' fears of Defendant Craig West and their reasonable fears that if they tried to leave the West Defendants' employ, they faced detention, arrest, forced deportation, or other serious harms.

109.   Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, Lagarda Huerta, and Mendivil Talamante reasonably believed they had no choice but to continue working for Defendant L.T. West.

**F.  Plaintiffs' Escape**

110.   That changed in late May 2011, when officials at the Mexican Consulate in New Orleans became aware of Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta's situation at L.T. West and provided resources that enabled them to safely escape Defendant Craig West and L.T. West.  Because the conditions at L.T. West became intolerable, Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta were constructively discharged on or about May 26, 2011, when they fled the L.T. West premises late at night in the company of officials from the Consulate.

111.   After Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho and Lagarda Huerta's escape, Defendant Craig West informed the remaining H-2A employees, directly and through his supervisors, interpreters and agents, that he was sending them back to Mexico and there was no more work.  Through these actions, the employment of Plaintiffs Mendivil Talamante, Mendivil Armenta, and Flores Gaxiola at L.T. West was terminated by the West Defendants during the last week of May 2011, six months before the anticipated term of employment as set forth in the clearance order.

**FIRST CAUSE OF ACTION**
Violations of the Fair Labor Standards Act
*All Plaintiffs*
*(Against Defendants L.T. West, Craig West, Troy West, Catherine West)*

112.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.    Defendants L.T. West, Craig West, Troy West and Catherine West violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a) by not paying Plaintiffs the federal statutory minimum wage for every compensable hour that Plaintiffs worked for Defendants between April 9, 2011 and late May 2011.

114.    Defendants' violations of Plaintiffs' rights under the FLSA as described herein were deliberate, intentional, and willful.

115.    As a consequence of Defendants' violations, Plaintiffs are entitled to recover their unpaid minimum wages, plus an additional amount in liquidated damages, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
Breach of Contract
*All Plaintiffs*
*(Against Defendants L.T. West, Craig West, and Troy West)*

116.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    The USDOL clearance order described in Paragraphs 22-24 of this Complaint constituted an employment contract between Defendants L.T. West, Craig West and Troy West and each Plaintiff.

118.    Plaintiffs performed all contractual obligations of employment that they were called upon to perform under their employment contracts with Defendants.

119.    Defendants failed to perform their obligations under their employment contracts with each Plaintiff and breached contractual obligations owed by them to each Plaintiff, including by:

a.      Failing to pay the Adverse Effect Wage Rate as required by 20 C.F.R. § 655.122(l);

b.      Failing to pay the three-fourths (¾) guarantee, as required by 20 C.F.R. § 655.122(i);

c.      Failing to furnish housing that met the substantive health and safety standards set forth at 29 C.F.R. § 1910.142 and/or 20 C.F.R. §§ 654.404 - 654.417;

d.      Failing to provide workers with an hours and earnings statement as required by 20 C.F.R. § 655.122(k);

e.      Failing to provide workers with a copy of the work contract with all terms and conditions of employment no later than the time the worker applies for a visa as required by 20 C.F.R. § 655.122(q);

f.      Holding and/or confiscating workers' passports and visas in violation of 20 C.F.R. § 655.135(e);

g.      Failing to comply with all applicable federal and state employment-related laws and regulations as required by 20 C.F.R. § 655.135(e);

> h.    In the case of Plaintiff Mendivil Talamante, intimidating, threatening, and/or coercing Plaintiff Mendivil Talamante after she invoked the protection afforded her under the H-2A program from employer confiscation of identity documents, in violation of 20 C.F.R.  655.135(h).

120.    Defendants' breaches were deliberate, willful, intentional, and in bad faith.

121.    Defendants' breaches of Plaintiffs' employment contracts caused Plaintiffs substantial injuries, including lost wages, warranting an award of compensatory damages, including actual, incidental, and consequential damages.

### THIRD CAUSE OF ACTION
Trafficking Victims Protection Reauthorization Act of 2003:
Forced Labor (18 U.S.C. §1589(a))
*Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela,
Lagarda Huerta, Mendivil Talamante*
*(Against Defendants L.T. West and Craig West)*

122.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123.    Plaintiffs are authorized to bring these civil claims against Defendants L.T. West and Craig West pursuant to the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

124.    Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, Mendivil Talamante are victims of violations of the following sections of the TVPRA:  18 U.S.C. § 1589, 1590, 1592, and 1594.

125.    Defendants L.T. West and Craig West were perpetrators of the violations of 18 U.S.C. § 1589, 1590, 1592, and 1594.

126.    Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value from participation in a venture which they knew or should have known was engaged in acts in violation of 18 U.S.C. § 1589, 1590, 1592, and 1594.

127.    Defendants L.T. West and Craig West subjected Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante to forced labor in violation of 18 U.S.C. § 1589(a).

128.    Defendants L.T. West and Craig West knowingly obtained the labor and services of Plaintiffs by means of force or threats of force in violation of 18 U.S.C. § 1589(a)(1).

129.    Defendants L.T. West and Craig West knowingly obtained the labor and services of Plaintiffs by means of serious harm or threats of serious harm to that person or another person in violation of 18 U.S.C. § 1589(a)(2).

130.    Defendants L.T. West and Craig West knowingly obtained the labor and services of Plaintiffs by means of the abuse or threatened abuse of law or legal process, including threats of  deportation, arrest, and the cancellation of Plaintiffs' visas,  in violation of 18 U.S.C. § 1589(a)(3).

131.    Defendants L.T. West and Craig West knowingly obtained the labor and services of Plaintiffs by means of a scheme, plan, or pattern that was intended to cause Plaintiffs to believe that if they did not perform such labor services, that they or another person would suffer serious harm or physical restraint, in violation of 18 U.S.C. § 1589(a)(4).

132.    As a proximate result of the conduct of Defendants L.T. West and Craig West, Plaintiffs have suffered substantial injuries and are entitled to recover compensatory and punitive damages.

## FOURTH CAUSE OF ACTION

Trafficking Victims Protection Reauthorization Act of 2003:
Forced Labor (18 U.S.C. §1589(b))
*Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela,*
*Lagarda Huerta, Mendivil Talamante*
*(Against Defendants L.T. West and Craig West)*

133.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134.    In violation of 18 U.S.C. 1589(b), Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value, from participation in a venture that has engaged in the providing or obtaining of labor or services from Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante, in a manner prohibited by 18 U.S.C § 1589(a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by prohibited means.

135.    Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value, from participation in a venture that has engaged in the providing or obtaining of labor or services by means of force or threats of force in violation of 18 U.S.C. § 1589(a)(1), knowing or in reckless disregard of the fact that the venture engaged in the providing or obtaining of labor or services by any such means.

136.    Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value, from participation in a venture that has engaged in the providing or obtaining of labor or services by means of serious harm or threats of serious harm to that person or another person in violation of 18 U.S.C. § 1589(a)(2), knowing or in reckless disregard of the fact that the venture engaged in the providing or obtaining of labor or services by any such means.

137.    Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value, from participation in a venture that has engaged in the providing or obtaining of labor or services by means of the abuse or threatened abuse of law or legal process, in violation of 18 U.S.C. § 1589(a)(3), knowing or in reckless disregard of the fact that the venture engaged in the providing or obtaining of labor or services by any such means.

138.    Defendants L.T. West and Craig West knowingly benefitted, financially or by receiving anything of value, from participation in a venture that has engaged in the providing or obtaining of labor or services by means of a scheme, plan, or pattern that was intended to cause Plaintiffs to believe that if they did not perform such labor services, that they or another person would suffer serious harm or physical restraint, in violation of 18 U.S.C. § 1589(a)(4), knowing or in reckless disregard of the fact that the venture engaged in the providing or obtaining of labor or services by any such means.

139.    As a proximate result of the conduct of Defendants L.T. West and Craig West, Plaintiffs have suffered substantial injuries and are entitled to recover compensatory and punitive damages.

**FIFTH CAUSE OF ACTION**
Trafficking Victims Protection Reauthorization Act of 2003:
Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor
(18 U.S.C. § 1590)
*Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela,*
*Lagarda Huerta, Mendivil Talamante*
*(Against Defendants L.T. West and Craig West)*

140.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

141.    Defendants L.T. West and Craig West knowingly recruited, harbored, transported provided, and/or obtained Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela,

Lagarda Huerta, and Mendivil Talamante so as to obtain their labor or services in violation of the TVPRA, 18 U.S.C. § 1590.

142.     As a proximate result of the conduct of Defendants L.T. West and Craig West, Plaintiffs have suffered substantial injuries and are entitled to recover compensatory and punitive damages.

### SIXTH CAUSE OF ACTION
Trafficking Victims Protection Reauthorization Act of 2003:
Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage,
Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)
*Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela,*
*Lagarda Huerta, Mendivil Talamante*
*(Against Defendants L.T. West and Craig West)*

143.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

144.     In violation of 18 U.S.C. 1592, Defendants L.T. West and Craig West knowingly concealed, removed, confiscated, and/or possessed Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta, and Mendivil Talamante's actual or purported passports or other immigration documents in the course of a violation, and/or with the intent to violate 18 U.S.C. §§ 1589, 1590, and 1594(a).

145.     As a proximate result of the conduct of Defendants L.T. West and Craig West, Plaintiffs have suffered substantial injuries and are entitled to recover compensatory and punitive damages.

## SEVENTH CAUSE OF ACTION

Trafficking Victims Protection Reauthorization Act of 2003:
Attempt to Violate 18 U.S.C. § 1589 and 1590 (18 U.S.C. § 1594(a))
*Plaintiffs Valdez Huerta, Cabrera Huicho, Gonzalez Valenzuela, Lagarda Huerta,*
*Mendivil Talamante*
*(Against Defendants L.T. West and Craig West)*

146.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147.    Defendants L.T. West and Craig West attempted to violate 18 U.S.C. §§ 1589 and 1590, in violation of 18 U.S.C. § 1594(a).

148.    As a proximate result of the conduct of Defendants L.T. West and Craig West, Plaintiffs have suffered substantial injuries and are entitled to recover compensatory and punitive damages.

## EIGHTH CAUSE OF ACTION

Discrimination in Violation of 42 U.S.C. § 1981
*All Plaintiffs*
*(Against Defendants L.T. West and Craig West)*

149.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

150.     Defendant L.T. West's USDOL clearance order set forth the terms of Plaintiffs' employment, including minimum wages, benefits, and conditions of employment, and constituted Plaintiffs' employment contract with Defendants L.T. West, Craig West, and Troy West.

151.    Through the conduct described above, Defendants L.T. West and Craig West directly and intentionally denied Plaintiffs' contractual wages, benefits, terms and conditions of employment and did so because of Plaintiffs' race, ancestry, ethnic characteristics, or alienage.

152.    Defendants L.T. West and Craig West intentionally discriminated against Plaintiffs on the basis of their race, ancestry, ethnic characteristics, or alienage with respect to their wages.

153.    The conditions under which Defendants L.T. West West and Craig West required Plaintiffs to live and work, including harassment, threats, intimidation, and substandard housing, created a hostile work environment because they were so severe or pervasive that a reasonable person would find them hostile or abusive, and Plaintiffs in fact perceived them to be hostile and abusive.

154.    Defendant L.T. West condoned, ratified, approved, and acquiesced in all of Craig West's conduct towards Plaintiffs as described above.

155.    By reason of the conduct described above, Defendants L.T. West and Craig West caused injury to Plaintiffs, including but not limited to disparate wages, mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory and punitive damages.

## NINTH CAUSE OF ACTION
42 U.S.C. § 1983
*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe 1)*

156.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

157.    Defendant Doe 1 arrested Plaintiffs Valdez Huerta and Gonzalez Valenzuela without probable cause to believe that they had violated the law.

158.    Defendant Doe 1 intended to impose an extended restraint on Plaintiffs Valdez Huerta and Gonzalez Valenzuela's liberty.  Given the circumstances, a reasonable person would

not consider herself free to leave and Plaintiffs Valdez Huerta and Gonzalez Valenzuela in fact did not consider themselves free to leave.

159.    Through the conduct described above, Defendant Doe 1 violated Plaintiffs Valdez Huerta and Gonzalez Valenzuela's right to be free from unreasonable seizure, that is, a seizure without probable cause, in violation of the Fourth Amendment of the United States Constitution.

160.    Defendant Doe 1 acted knowingly, willfully, maliciously, intentionally, and without justification.

161.    Through the conduct described above, Defendant Craig West and Defendant Doe 1 caused injury to Plaintiffs Valdez Huerta and Gonzalez Valenzuela, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory and punitive damages.

### TENTH CAUSE OF ACTION
Conspiracy to Violate 42 U.S.C. §1983
*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendants Craig West, Doe 1, Doe 2)*

162.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

163.    Defendants West, Doe 1, and Doe 2 agreed or reached a mutual understanding to unlawfully detain Plaintiffs Valdez Huerta and Gonzalez Valenzuela in order to intimidate, threaten and harass them.

164.    In furtherance of that agreement, Defendants Doe 1 and Doe 2 detained Plaintiffs Valdez Huerta and Gonzalez Valenzuela without probable cause, after Defendant Craig West requested that they do so.

165.    Through the conduct described above, Defendants Craig West, Doe 1, and Doe 2 conspired to violate the right to be free from unreasonable seizure, guaranteed to Plaintiffs

Valdez Huerta and Gonzalez Valenzuela under the Fourth Amendment of the United States Constitution.

166.    Through the conduct described above, Defendants Craig West, Doe 1, and Doe 2 caused injury to Plaintiffs Valdez Huerta and Gonzalez Valenzuela, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory and punitive damages.

**ELEVENTH CAUSE OF ACTION**
Conspiracy to Interfere with Civil Rights, 42 U.S.C. §1985(3)
*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendants Craig West, Doe 1, and Doe 2)*

167.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

168.    Defendants Craig West, Doe 1, Doe 2 conspired, agreed, planned and coordinated for the purpose of depriving Plaintiffs Valdez Huerta and Gonzalez Valenzuela of their rights under the Fourth Amendment of the U.S. Constitution to be free from unreasonable seizures.

169.    Defendants Craig West, Doe 1, Doe 2 were motivated by racial animus when they conspired to deprive Plaintiffs Valdez Huerta and Gonzalez Valenzuela of their rights and acted in furtherance of a conspiracy to deprive Plaintiffs Valdez Huerta and Gonzalez Valenzuela of their rights.

170.    Defendants Craig West, Doe 1, Doe 2 knowingly, willfully, maliciously, intentionally, and without justification planned and acted to deprive Plaintiffs Valdez Huerta and Gonzalez Valenzuela of their rights.

171.    Through the conduct described above, Defendants Craig West, Doe 1, Doe 2 caused injury to Plaintiffs Valdez Huerta and Gonzalez Valenzuela, including but not limited to

mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory and punitive damages.

**TWELFTH CAUSE OF ACTION**
Louisiana Constitution, Article I, § 5
*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe)*

172.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

173.    Defendant Doe arrested Plaintiffs Valdez Huerta and Gonzalez Valenzuela without probable cause to believe that they had violated the law.

174.    Defendant Doe intended to impose an extended restraint on Plaintiffs Valdez Huerta and Gonzalez Valenzuela's liberty. Given the circumstances, a reasonable person would not have considered herself free to leave and Plaintiffs Valdez Huerta and Gonzalez Valenzuela in fact did not consider themselves free to leave.

175.    Through the conduct described above, Defendant Doe violated Plaintiffs Valdez Huerta and Gonzalez Valenzuela's right to be free from unreasonable seizure, that is, a seizure without probable cause, in violation of Article I, § 5 of the Louisiana Constitution.

176.    Defendant Doe acted knowingly, willfully, maliciously, intentionally, and without justification.

177.    Through the conduct described above, Defendant Craig West and Defendant Doe caused injury to Plaintiffs Valdez Huerta and Gonzalez Valenzuela, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

## THIRTEENTH CAUSE OF ACTION
False Imprisonment
*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe 1)*

178.   Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

179.   Defendant Doe 1 acted to unlawfully and unreasonably detain Plaintiffs Valdez Huerta and Gonzalez Valenzuela against their will and consent.

180.   Defendant Doe 1 acted with malice, gross negligence, and/or reckless disregard.

181.   Through the conduct described above, Defendant Craig West and Defendant Doe 1 caused injury to Plaintiffs Valdez Huerta and Gonzalez Valenzuela, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

## FOURTEENTH CAUSE OF ACTION
Assault
*Plaintiffs Valdez Huerta and Lagarda Huerta*
*(Against Defendant Craig West)*

*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe 1)*

182.   Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

183.   Defendant Craig West intentionally placed Plaintiffs Valdez Huerta and Lagarda Huerta in apprehension of imminent harmful or offensive contact.

184.   Defendant Doe 1 intentionally placed Plaintiffs Valdez Huerta and Gonzalez Valenzuela in apprehension of imminent harmful or offensive contact.

36

185.    Defendants West and Doe 1's threatening conduct would cause a reasonable person to fear harmful or offensive contact, and Plaintiffs Valdez Huerta, Lagarda Huerta and Gonzalez Valenzuela in fact feared harmful or offensive contact.

186.    Through the conduct described above, Defendant Craig West and Defendant Doe 1 caused injury to Plaintiffs Valdez Huerta, Lagarda Huerta and Gonzalez Valenzuela, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

## FIFTEENTH CAUSE OF ACTION
Battery
*Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho*
*(Against Craig West)*

187.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

188.    Defendant Craig West caused harmful or offensive contacts to occur to Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho and intended to cause Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho to suffer such contacts.

189.    Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho did not consent to the harmful or offensive contact caused by Defendant Craig West.

190.    Defendant Craig West acted with malice, gross negligence, and/or reckless disregard.

191.    Through the conduct described above, Defendant Craig West and Defendant Doe caused injury to Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

## SIXTEENTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
*Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta*
*(Against Craig West)*

*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe 1)*

192.   Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

193.   Defendant Craig West's conduct described above regarding Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela and Cabrera Huicho, was extreme and outrageous.

194.   Defendant Craig West's actions to deliberately and repeatedly harass, threaten, and intimidate Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela, and Cabrera Huicho throughout the time they were employed by and worked at L.T. West, were extreme and outrageous.

195.   Defendant Doe 1's conduct described above regarding Plaintiffs Valdez Huerta and Gonzalez Valenzuela was extreme and outrageous.

196.   Defendants West and Doe 1 undertook this conduct with the intent to cause, or with disregard of, the reasonable foreseeability of causing, emotional distress.

197.   Defendant Craig West's and Doe 1's conduct was intentional, willful, and/or wanton.

198.   Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta suffered severe emotional distress as a result of Defendant Craig West's actions.

199.   Plaintiffs Valdez Huerta and Gonzalez Valenzuela suffered severe emotional distress as a result of Defendant Doe 1's actions.

200.     Through the conduct described above, Defendant Craig West and Defendant Doe 1 caused injury to Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Lagarda Huerta, and Cabrera Huicho, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

### SEVENTEENTH CAUSE OF ACTION
Negligent Infliction of Emotional Distress
*Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Cabrera Huicho, and Lagarda Huerta*
*(Against Craig West)*

*Plaintiffs Valdez Huerta and Gonzalez Valenzuela*
*(Against Defendant Doe 1)*

201.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

202.     Defendant Craig West's actions to deliberately and repeatedly harass, threaten, and intimidate Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela, and Cabrera Huicho throughout the time they were employed by and worked at L.T. West, were negligent and caused Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela, and Cabrera Huicho to fear for their personal safety.

203.     Defendant Craig West's actions to assault Plaintiffs Valdez Huerta and Lagarda Huerta were negligent and caused Plaintiffs Valdez Huerta and Lagarda Huerta to fear for their personal safety.

204.     Defendant Craig West's actions to batter Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho were negligent and caused Plaintiffs Valdez Huerta, Lagarda Huerta, and Cabrera Huicho to fear for their personal safety.

205.     Defendant Doe 1's actions to falsely imprison and assault Plaintiffs Valdez Huerta and Gonzalez Valenzuela were negligent and caused Plaintiffs Valdez Huerta and Gonzalez Valenzuela to fear for their personal safety.

206.     Plaintiffs Valdez Huerta, Lagarda Huerta, Gonzalez Valenzuela, and Cabrera Huicho suffered severe emotional injury as a result of Defendant Craig West and/or Defendant Doe 1's conduct.

207.     The emotional distress suffered by Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Lagarda Huerta, and Cabrera Huicho was a reasonably foreseeable result of Defendant Craig West's actions.

208.     The emotional distress suffered by Plaintiffs Valdez Huerta and Gonzalez Valenzuela was a reasonably foreseeable result of Defendant Doe 1's actions.

209.     Through the conduct described above, Defendants Craig West and Doe 1 caused injury to Plaintiffs Valdez Huerta, Gonzalez Valenzuela, Lagarda Huerta, and Cabrera Huicho, including but not limited to mental anguish, emotional pain and suffering, loss of enjoyment of life, and humiliation, warranting an award of compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter an order:

A.     Enter a declaratory judgment that Defendants violated Plaintiffs' rights under the TVPRA, the FLSA, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Louisiana Constitution, and Art. 2315 of the Louisiana Civil Code;

B.     Award Plaintiffs their lost wages, unpaid wages, damages and other benefits under the FLSA and for breach of contract;

C.      Award Plaintiffs compensatory damages for Defendants' violations of Plaintiffs' federal and state civil rights and under Art. 2315 of the Louisiana Civil Code;

D.      Award Plaintiffs liquidated damages for Defendants' violations of the FLSA and punitive damages for Defendants' violations of the TVPRA, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985;

E.      Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

F.      Award Plaintiffs costs, expenses and attorneys' fees; and

G.      Grant such further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.

Dated:  August 31, 2011

Respectfully Submitted,

/s/ Nancy Picard
_____
Nancy Picard
Louisiana Bar No. 19449
npicard@ruspclaw.com
ROBEIN, URANN, SPENCER,
PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, Louisiana 70002
Telephone: 504.885.9994
Fax: 504.885.9969

*Local Counsel*

/s/ Spring Miller
_____
Spring Miller
Tennessee Bar No. 026485
*Pro Hac Vice Pending*
smiller@trla.org

SOUTHERN MIGRANT LEGAL
SERVICES A PROJECT OF TEXAS
RIOGRANDE LEGAL AID, INC.
311 Plus Park Blvd. Ste. 135

/s/ José J. Behar
_____
One of the Attorneys for Plaintiffs
Matthew J. Piers
Illinois Bar No. 2206161
*Pro Hac Vice Pending*
mpiers@hsplegal.com

José J. Behar
Illinois Bar No. 6203727
*Pro Hac Vice Pending*
jbehar@hsplegal.com

Juliet Berger-White
*Pro Hac Vice Pending*
Illinois Bar No. 6269404
jberger-white@hsplegal.com

Caryn C. Lederer
Illinois Bar No. 6304495
*Pro Hac Vice Pending*
clederer@hsplegal.com

Nashville, TN 37217
Telephone: (615) 750-1200
Fax: (615) 366-3349

*Attorneys for Plaintiffs Miriam Johana Mendivil Talamante and Aurora Mendivil Armenta, Only*

HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Telephone: (312) 580-0100
Fax: (312) 580-1994

*Attorneys for Plaintiffs Marisela Valdez Huerta, Cindy Alejandra Cabrera Huicho, Isy Elizabeth Gonzalez Valenzuela, Perla Yasmin Lagarda Huerta, and Marta Icela Flores Gaxiola*