UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

MARISELA VALDEZ HUERTA, ET AL    :

VERSUS                    :    CIVIL ACTION NO.: 6:11-CV-01589

L. T. WEST, INC., ET AL         :    JUDGE HAIK, MAG. JUDGE HILL

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PROTECTIVE ORDER AND COSTS [COURT DOC. 91]**

---

RESPECTFULLY SUBMITTED:

BORNE & WILKES, L.L.P.


BY: _____ S/John F. Wilkes, III _____
         JOHN F. WILKES, III (Bar Roll #1644), T.A.
         JOY C. RABALAIS (Bar Roll #26476)
         RAY F. LUCAS, III (Bar Roll #27558)
         ERIN N. FRUGE (Bar Roll #32459)
         TONYA R. SMITH (Bar Roll #30065)
         200 West Congress Street, Suite 1000
         Post Office Box 4305
         Lafayette, Louisiana 70502-4305
         Telephone: (337) 232-1604 Ext. 201
         Facsimile: (337) 232-1837
         E-mail: wilkes@bornewilkes.com

ATTORNEYS FOR ROBERT MCGEE,
INDIVIDUALLY; LUCAS LAVERGNE,
INDIVIDUALLY; and the TOWN OF MAMOU

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

INDEX TO EXHIBITS

EXHIBIT "A"
*En Globo* emails regarding Proposed Confidentiality Order

EXHIBIT "B"
*En Globo* Excerpts of Deposition sof Rosales, Osuma, and Pava

EXHIBIT "C"
P0288-0291, 289, 0300-0302, 0304-0311, 0314-0319, 0323-0325, 0331-0345

EXHIBIT "D"
Proces Verbal taken June 13, 2012

EXHIBIT "E"
May 23, 2012 Notice of Depositions of Huerta and Valenzuela

# TABLE OF AUTHORITIES

**CASES:**

*Arizona v. United States*, ___ U.S. ____ (June 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Barrera v. Boughton*, 2010 WL 1240904 (D.Conn. March 2010) . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Bead Filters Intern., LLC v. Mills*, 2009 WL 3837863 (W.D. Tex. Nov. 2009) . . . . . . . . . . . . . . 13

*Blanchard and Co., Inc. v. Barrick Gold Corp.*, 2004 WL 737485 (E.D.La.2004) . . . . . . . . . . . . 8

*David v. Signal International, Inc.*, 257 F.R.D. 114 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275,
    152 L. Ed.2d 271 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Hall*, Sup.2011, 69 So.3d 417, 2011-1025 (La. 9/2/11) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Mendy*, Sup.2012, 2011-2275 (La. 2/17/12), 2012 WL 538948 . . . . . . . . . . . . . . . . . . . . . 12

*In re Newman*, Sup.2012, 83 So.3d 1018, 2012-0259 La. 3/30/12 . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-354, 98 S. Ct. 2380,
    57 L. Ed.2d 253 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Richardson v. Richardson*, 2000-1641 (La.App. 1 Cir. 12/22/00), 774 So.2d 1264 . . . . . . . . . . . 12

*Romero-Hernandez v. Alexander*, 2009 WL 1809484 (N.D. Miss. June 24, 2009) . . . . . . . . . . . . 8

*Rushing v. Board of Supervisors of University of Louisiana System*, 270 F.R.D. 259
    (M.D. La. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Garrett*, 571 F.2d 1323 (5th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Westside-Marrer Jeep Eagle, Inc.*, 1998 WL 186728 (E.D. La. Apr. 1998) . . . . . . . . . . . . . . . . . . 14

**CONSTITUTIONAL PROVISIONS, STATUTES and OTHER PROVISIONS:**

42 U.S.C. 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

42 U.S.C. 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

FRCP 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

FRCP 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

FRCP 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

Louisiana Constitution Article I, Section 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Louisiana Rule of Professional Conduct 1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

MAY IT PLEASE THE COURT:

Defendants, ROBERT MCGEE, INDIVIDUALLY; LUCAS LAVERGNE, INDIVIDUALLY; and the TOWN OF MAMOU ("the Mamou Defendants"), file this Memorandum in Opposition to plaintiffs' Motion for Protective Order and Costs [Court Docs. # 91]. Defendants assert that the information they seek with regards to plaintiffs' current work address and residence are relevant to these proceedings generally, and specifically for the preparation of their defense to plaintiffs' multiple claims, especially their claims of severe emotional anguish, loss of enjoyment of life, emotional pain and suffering, humiliation and "psychological injury" [Court Doc. 80, ¶¶161, 164, 169, 174, 181, 186, 193, 202, 203, 207, 208, 216, 219].

## I.    **FACTUAL BACKGROUND**

The complaint in this matter was filed by seven plaintiffs, Marisela Valdez Huerta, Cindy Alejandra Cabrera Huicho, Isy Elizabeth Gonzalez Valenzuela, Perla Yasmin Lagarda Huerta, Marta Icela Flores Gaxiola, Miriam Johana Mendivil Talamante, and Aurora Mendivil Armenta, against seven defendants, L.T. West, Inc., James Craig West, Lucas Troy West, Catherine West, Robert McGee, Lucas Lavergne, and the Town of Mamou. Defendants Robert McGee, Lucas Lavergne, and the Town of Mamou.

As evidenced by plaintiffs Second Amended Complaint, filed November 21, 2011, Marisela Valdez Huerta and Isy Elizabeth Gonzalez Valenzuela are the only plaintiffs making claims against Officer Robert McGee, Officer Lucas Lavergne, and the Town of Mamou. [Court Doc. #37]. The claims by Marisela Valdez Huerta and Isy Elizabeth Gonzalez Valenzuela against McGee, Lavergne, and the Town of Mamou are solely for false arrest and imprisonment under both the United States and Louisiana Constitutions, "conspiracy" to violate Huerta and Valenzuela's civil rights, assault,

intentional infliction of emotional distress, and negligent infliction of emotional distress. [Second Amended Complaint, Court Doc. #37]. A conspiracy whicih plaintiffs claim existed, even though the Mamou defendants became involved solely because Mr. West called in his complaint to the Evangeline Parish Sheriff's Department, who in turn called the Mamou Police Department for assistance in stopping an unknown vehicle on Mr. West's property, which coincidentally was also occupied by plaintiffs Huerta and Valenzuela. Plaintiffs' claims against the Mamou Defendants, as previously argued in defendants' Motion for Separate Trials, are very different from the claims asserted against the West Defendants, and are very much intertwined considering plaintiffs' Third Amended Complaint. However, there are no claims against the Mamou Defendants for violation of any labor laws, and as such, the cases relied on by plaintiffs in their Motion for Protective Order are inapposite.

In fact, what was "agreed to" prior to defense counsel traveling to New Orleans regarding the scope of the deposition, the questions which could be asked therein, and the nature of the level of confidentiality which would be afforded such information, i.e., "Confidential Information" or "Attorneys' Eyes Only" information is greatly in dispute herein.

As the attached emails show, plaintiffs' attempts to limit defendants' ability to inquire into these matters was an 11th hour attempt at thwarting the deposition process, in general and specifically, was an end round attempt at preventing defendants from inquiring into matters of plaintiffs' current work and current residence, both of which, considering the allegations of severe emotional distress, are completely relevant herein (Exhibit "A," *en globo* emails regarding Proposed Confidentiality Order). This is especially so, in light of the deposition testimony had to date, wherein other individuals testified that Huerta and Valenzuela showed no signs of severe emotional

distress after their two hour detention at the Mamou Police Department, nor at any time thereafter, and that much of plaintiffs' current "distress" seems to be with the fact that they are unable to return home, not due to any conduct of defendants (Exhibit "B," *en globo* Excerpts of depositions of Alfredo Rosales, Paola Haro Osuma, and Noe Darvelio Castro Pava; Exhibit "C," P0288 to 0291, 0289, 0300 to 0302, 0304 to 0311, 0314 to 0319, 0323 to 0325, 0331 to 0345).

Furthermore, there has been much testimony to date that plaintiffs Huerta and Valenzuela enjoyed a particular lifestyle, which included going out to party almost nightly, drinking, and having a good time (Exhibit "B"). When defending such claims as severe emotional distress, loss of enjoyment of life, mental anguish, etc., it is incumbent on defense counsel to be able to disprove these allegations and/or have an ability to impeach plaintiffs' claims. How is defense counsel to do that without having the ability to share, at a minimum, plaintiffs' current work address and/or current residential address with at least a third party vendor such as a private investigator? Defendants pray that should this Honorable Court rule that such information should be "Attorneys' Eyes Only," that the Order state that defense counsel be allowed to share that information with at least properly licensed private investigators and/or any experts retained by defendants in this case.

Plaintiffs twist and turn the statements of defense counsel about hiring someone to see if plaintiffs are out dancing and singing into some sort of threat. Nothing could be farther from the truth. Anyone who has ever practiced law understands that the truth and veracity of a plaintiffs' claims of physical and/or psychological harm are often investigated by the use of private investigators. It has nothing to do with threatening these women with deportation. It has nothing to do with threatening them at all. They brought this lawsuit and make claims that their emotional well-being has been detrimentally affected, yet, they seek to hide behind labor law cases which state

3

that their current *immigration* status is irrelevant to deprive defendants from the ability of either disproving their claims of severe emotional distress and/or their claims that they have a loss of enjoyment of life. Plaintiffs attempts herein completely try to hog tie the defendants' ability to defend themselves against these allegations. No doubt, many plaintiffs who file lawsuits are scared; nonetheless, when making claims of extreme emotional distress and loss ability to earn wages, the Courts have been willing to allow defendants to explore these areas to determine the extent to which the claimed damages are, in fact, true.

There is no sinister motive in seeking this information. There was no agreement in place prior to plaintiffs' depositions which would limit the scope of inquiry to this degree. Additionally, the proposed Protective Order was circulated on June 5, 2012. Issues were immediately addressed by counsel for the West Defendants, regarding clarification of the damages plaintiffs seek, as well as whether plaintiffs are seeking any type of compensation for future loss of ability to work due to the incidents sued upon. Obviously, no agreement was had on this issue and no stipulations were made with regards to whether plaintiffs were claiming a current inability to work due to problems they claim befell them at the hands of defendants.

Thus, defendants' need for this information was two-fold: (1) to properly investigate plaintiffs' claims of extreme emotional distress and loss of enjoyment of life and their potential causes (which may be wholly unrelated to the defendants' actions, but instead, related to other factors); and (2) to determine the extent, if any, that their current income is affected due to the allegations contained in their Complaints. These are proper lines of inquiry, and plaintiffs' attempts to turn these simple requests (which were explained in detail in numerous Rule 37.1 conferences

4

regarding plaintiffs' failure to fully respond to defendants' discovery requests, as well as on the telephone conference held on June 12, 2012.

Undersigned counsel will testify at the hearing on plaintiffs' Motion and will recount specifically what the results were of the June 12, 2012 telephone conference, i.e., that all such information regarding plaintiffs' current immigration status, current employment address and current residential address would be deemed "Confidential Information," and that the phrase "Attorneys' Eyes Only" would be entirely removed from the proposed order. That the informal "agreement" was unilaterally changed by plaintiffs' counsel, as evidenced by the email of June 12, 2012 at 6:06 p.m. (at a time when attorney Wilkes told counsel for plaintiffs that he would already have left for New Orleans). This agreement – that NOTHING would be "Attorneys' Eyes Only" and all such information would be considered "Confidential Information" was confirmed by co-defendants' attorney, Ms. Manual, during the proces verbal taken on the morning of Huerta's scheduled deposition (Exhibit "D").

Then, to add further insult to the agreement reached on the 1 hour and 13 minute telephone conference held between counsel for the parties on June 12, 2012, plaintiffs' counsel showed up with no protective order for all to sign, then added another twist on the morning of the scheduled deposition – now, they would not allow inquiry into plaintiffs' current work without that being for "Attorneys' Eyes Only."

Let it be known that had undersigned counsel known on the early afternoon of June 12, 2012 that any information would have been so designated, the deposition would have been canceled then, before having to incur the cost of traveling to New Orleans. Attorneys for the plaintiffs were already in New Orleans on June 12, 2012 when they participated in the phone conference. Undersigned

5

counsel, in good faith, was led to believe that the issues were worked out to the plaintiffs'

satisfaction, and that is the only reason he agreed to attempt to proceed with the plaintiffs'

depositions.

Additionally, plaintiffs now have the audacity to claim that undersigned counsel threatened

Ms. Huerta, "as well as other plaintiffs" (who were not even present). Undersigned counsel did

make light conversation with Ms. Huerta before the proces verbal, in her native language. Huerta's

response to counsel's question was in the form of a smile, as she returned his greeting in her native

language. At no time during the proces verbal was Huerta crying or visibly upset. And, **if she**

**cannot speak English**, as her attorneys claim, then how was she threatened by any of the colloquy

made by undersigned counsel in English? Despite plaintiffs' counsel having brought along one of

their coworkers, a non-attorney, who could translate what was occurring during the proces verbal, no

such translation occurred on or off the record. Thus, it is unclear what plaintiffs' counsel told their

client after the proces verbal was concluded, and plaintiffs' counsel fails to articulate what "threats"

were made upon undersigned counsel's exit from the proces verbal and/or to any other plaintiffs

[Court Doc. #91-3, p. 2, "Moreover, before walking out of the room, Mr. Wilkes made certain

statements that reflect an intent to harass, scare and intimidate the Plaintiffs as they seek to vindicate

their rights in this lawsuit, further underscoring the need for entry of a protective order."] What were

these statements? Nowhere in plaintiffs' Motion or Memorandum do they state what these

statements were, nor how they could be reasonably interpreted as being intimidating.

Plaintiffs' fears that they will be at "substantial risk of harassment, scare tactics, and possibly

violence" are unfounded. They assert but one sole interaction with the Mamou Defendants, an

interaction that occurred over one year ago. They do not claim that they have ever seen the Mamou

Police officers before this incident or since, nor do they claim that any threats were made by the Mamou officers after the May 1-2 incident sued upon. In fact, there are no claims, thus, standing alone, this cannot form the basis for this type of extensive protective order.

Undersigned counsel is certainly sensitive to the potential plight of these plaintiffs, having known, befriended and worked with migrant workers (legal and illegal) himself while growing up in West Texas and South Louisiana all of his life. While sympathetic to these women and their current situation, counsel still has a job to do. That job does not include terrorizing witnesses or trying to convince them not to move forward with their claims. That job does include representing his clients to the utmost of his ability, and doing what is legal and necessary to disprove the allegations brought by these woman, which allegations have already been impeached.[1]

## II.   LAW AND ARGUMENT

According to Rule 26(b) of the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."19 Rule 26(c) authorizes courts, for good cause, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters...." Fed.R.Civ.P. 26(c). The burden is upon the party seeking non-disclosure or a protective order to show good cause. See *United States v. Garrett*, 571 F.2d

---

[1] In fact, counsel for the West Defendants has recently produced very graphic photographs purportedly of one of the plaintiffs, Perla Yasmin Lagarda Huerta, which they claim were sent by her to Craig West from Mexico. The nature and extent to which this exchange and/or any other which may come to light during discovery was consensual and non-coercive is at the very heart of many of plaintiffs' claims. Instead of attaching these salacious photographs into the public record, undersigned counsel will have them available at the hearing, should the Court wish to view them.

1323, 1326 & n. 3 (5th Cir.1978); *Blanchard and Co., Inc. v. Barrick Gold Corp.*, 2004 WL 737485 (E.D.La.2004).

The theory advanced by the plaintiffs is based on a line of cases which establish that FLSA wage and hour provisions apply to both legal and illegal workers and, as such, the immigration status of a plaintiff is not relevant. However, plaintiffs' Complaints assert multifarious allegations, including claims of false arrest, assault, false imprisonment, intentional infliction of emotional distress, etc.

Importantly, the rule argued by the plaintiffs is not a rule of general application but rather one peculiar to FLSA wage and hour litigation, and only for certain claims in certain cases. See *Romero-Hernandez v. Alexander*, 2009 WL 1809484 (N.D. Miss. June 24, 2009)(Despite the availability of the FLSA to both legal and illegal aliens to redress claims for unpaid minimum and overtime wages for hours actually worked, it is likely that *Hoffman* would nevertheless bar payment for hours not actually worked under the 3/4's guarantee contract claims of an illegal alien. Accordingly, for purposes of discovery only and without ruling on admissibility of such evidence at trial, the court concludes that a plaintiff's immigration status during the period of the employment contract, as well as the means of obtaining the H-2A visas for that employment, is relevant to plaintiff's claims for "back pay" because an illegal alien may not be able to recover compensation for hours he or she did not actually work. Citing, *Hoffman Plastic,* 535 U.S. 137, 140-141, 122 S.Ct. 1275, 1278-1279, 152 L.Ed.2d 271).

Furthermore, the Court in *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) explicitly noted that "[t]he court must focus on the claims and defenses involved in the action" before the Court can decide whether protection is warranted. This is because a question that might frighten a plaintiff

8

unjustifiably in one context does not do so unjustifiably in a different context in which the question is relevant to a "material claim." Here, the biggest issue defense has with non-disclosure of current home and work addresses deals with the severe emotional damages they claim, as well as any loss of current income due to the alleged acts of the Mamou Defendants.

The numerous other claims made by the plaintiffs are ignored in their motion. These claims include claims under 42 U.S.C.A. 1981, 1983, 1985, claims under Louisiana Constitution Article I, Section 5, claims of intentional and negligent infliction of emotional distress, and claims of assault and battery. Plaintiffs have not explained why the court should extend the rulings in the FLSA wage and hour cases to every one of their other purported claims. Instead, they rely only on the case of *David v. Signal International, Inc.*, 257 F.R.D. 114 (2009), wherein the Court, pre-class certification, ruled that the areas of inquiry (current immigration status, current work and home addresses) were irrelevant to ask of the putative class representatives. This is not a class action lawsuit! A close reading of *David* shows that the Court never got to the question of whether such information is relevant in regards to the parties' non-FLSA related claims, and/or whether those areas of inquiry would be relevant if the class was certified.

To the contrary, in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed.2d 271 (2002), the Supreme Court provided a reason why such a rule should not be extended past the FSLA wage and hour realm. In *Hoffman,* the Supreme Court held that certain relief awarded to an undocumented alien who had never been legally authorized to work in the United States "is foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA)." *Hoffman*, 535 U.S. at 140. In reaching this point, the Supreme Court found "that awarding backpay to illegal aliens runs

counter to policies underlying IRCA," that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations," and that it "would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." 535 U.S. at 149, 150, and 151. As counsel for the West Defendants' email in response to plaintiffs' request for Protective Order shows, she was more than knowledgeable about this fact and wanted a stipulation regarding back pay, front pay, etc. (Exhibit "A").

Moreover, the inquiries that plaintiffs seek protection from are highly relevant, especially with regards to their current residence and current work addresses. Relevance under Rule 26(b)(1) is "very broadly construed." To prevent discovery from occurring, the Court must first find that the discovery can have **no possible bearing on the case** and is unlikely to lead to discoverable evidence. Indeed, in *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-354, 98 S. Ct. 2380, 57 L. Ed.2d 253 (1978), the Supreme Court stressed that discovery may be sought for "a variety of fact-oriented issues . . . that are not related to the merits," *see id.*, 437 U.S. at 351, 98 S. Ct. at 2389.

Plaintiffs make much ado about the supposed *in terrorem* effects for this case; however, they have not cited the Court to one single case which found that *in terrorem* was a reason to deny discovery in a civil rights, Section 1983, 1981 or 1985 lawsuit, such as the one presented here. Instead, they hide behind the prior FLSA rulings to state that current immigration status is irrelevant. Let's face it – plaintiffs are not and cannot be making any type of wage and hour claims against the Mamou Defendants, as they were not plaintiffs' employer!

Plaintiffs' reliance on *Barrera v. Boughton*, 2010 WL 1240904 (D.Conn. March 2010) is likewise misplaced. There, the Court ruled only that documentation regarding immigration status

was non-discoverable in a Civil Rights case; not that the plaintiff's current work addresses or home addresses were non-discoverable and/or entitled to protection. Nowhere in that ruling is there any discussion about a civil rights plaintiff's current work address and/or home address being protected as "immigration status" or *in terrorem* materials. The *Barrera* ruling likewise predates the most recent U.S. Supreme Court pronouncement in *Arizona v. United States*, ___ U.S. ____ (June 2012), wherein the High Court upheld certain provisions of the Arizona law which allow local enforcement agencies to detain persons without proper identification or papers to ensure status under certain circumstances.

Moreover, plaintiffs memorandum alternatively argues that this motion for protective order be granted, because they claim that they are vulnerable because they are non-citizens. Well, what is obvious from the plethora of case law cited by plaintiffs in the Memorandum is that non-citizens fare very well in this country with regards to being protected by the Courts. Of course, any plaintiff – citizen or alien alike – who files claims against police officers whom they claim have done some harm to them, continue to have fear that something else will occur. However, as stated above, there is not one shred of evidence that the Mamou Defendants have in any way tried to initiate any form of contact, threat or coercion upon these plaintiffs since the date of the alleged incidents on May 1-2, 2011, nor are there any cases which could be found in the Section 1983 context to state that a civil rights plaintiff does not have to provide current work or home addresses in discovery. The *Davis*, *supra* case made sure to note therein, that there, they had evidence of the additional tactics being used by the employer defendant to discourage potential class members from joining the suit, with further threats of deportation or other harms. Such cannot be said about these plaintiffs. In fact, if brought to the hearing to testify before the Court, quite surely they would advise that since they left

L.T. West properties to relocate to their currently unknown position, they have had absolutely no contact with any of the Mamou defendants, nor have any of the Mamou defendants sought them out in any way (Exhibit "C").

For plaintiffs' attorneys to take an honest statement as to why information regarding current work and residential addresses should not be kept for "Attorneys' Eyes Only" for the use of third party investigative vendors to conduct surveillance into some menacing threat warranting this type of unprecedented protective order is without merit and goes beyond the realm of client protection into the realm of character assassination.

Furthermore, with regards to defense counsel's position, both during the June 12, 2012 conference, and on the record in the proces verbal, Louisiana Rule of Professional Conduct 1.4 states that the "lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation **and the means by which they are to be pursued**." See also, *Richardson v. Richardson*, 2000-1641 (La.App. 1 Cir. 12/22/00), 774 So.2d 1264 (Trial court's error in prohibiting former spouses' attorneys from disclosing to former spouses testimony of counselor/therapist given in chambers in presence of court reporter and attorneys affected former spouses' substantial rights in child custody proceeding, requiring that judgment be vacated, where "gag order" impinged upon former spouses' right to fully explore testimony on cross-examination and contravened attorneys' obligation to keep client informed). In fact, Louisiana jurisprudence is replete with attorneys who have been disciplined by the Louisiana Supreme Court for failing to communicate with their clients. *In re Hall*, Sup.2011, 69 So.3d 417, 2011-1025 (La. 9/2/11); *In re Mendy*, Sup.2012, 2011-2275 (La. 2/17/12), 2012 WL 538948; *In re Newman*, Sup.2012, 83 So.3d 1018, 2012-0259 La. 3/30/12. As stated on the phone conference and during the proces verbal, the

need to share this information with third party vendors, including private investigators, goes to the heart of plaintiffs' credibility on their emotional distress and damages claims. Otherwise, defendants will be hogtied in their defense and will have little to no chance of refuting their claims of extreme emotional distress before the jury.

With regard to plaintiffs' argument that undersigned counsel violated FRCP 30 in stopping a deposition that never started, defendants assert that counsel was in good faith in canceling the deposition, especially in light of the fact that the matters which could be inquired into were ever changing, and the fact that defense counsel would have never even traveled to New Orleans had he known at the end of the June 12, 2012 telephone conversation that plaintiffs would require certain information to be for "Attorneys' Eyes Only," a fact which was discussed during the June 12th telephone conference, and to which all counsel agreed that no such protective language would be included in a Protective Order, making any such information "Confidential Only." During that phone conference, Mr. Wilkes said, "If it is going to be "attorneys' eyes only" why are we going tomorrow?" Furthermore, plaintiffs never sought formal protection before the depositions, despite the depositions of Huerta and Valenzuela having been noticed on May 23, 2012 (Exhibit "E"). Even Ms. Manuel attempted to come up with language to achieve that goal, but could not. And, the reason is because misleading Mr. Wilkes and Ms. Manuel, as at least Mr. Wilkes will testify, and Ms. Manuel testified during the proces verbal, works better, and they know it, and the Court should not condone such maneuvers.

With regards to plaintiffs' assertion that sensitive information is "routinely protected as attorneys' eyes only information," the two cases cited in support are easily distinguishable. In *Bead Filters Intern., LLC v. Mills*, 2009 WL 3837863 (W.D. Tex. Nov. 2009), there was a previous court

order in place designating certain items as "attorneys' eyes only." No such order was issued in this case. Also, with regards to *Westside-Marrer Jeep Eagle, Inc.*, 1998 WL 186728 (E.D. La. Apr. 1998), this case is distinguishable, because the information invovled was sensitive and proprietary financial information. The Court therein ruled that there was "ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." The court particularly noted that the plaintiff in *Weside-Marrer Jeep Eagle* had already demonstrated a propensity to disseminate defendant's confidential information. No such finding can be had herein, and this Honorable Court would have to base its ruling on plaintiffs' allegations alone, which have yet to be proven in this Honorable Court.

Should Your Honor grant plaintiffs' Motion in whole or in part, defendants pray that no award of attorney's fees or costs be allowed under the facts of this case. Under FRCP 37(a)(5)(A)(2) and (3), defendants show that their objection to take the depositions of these two plaintiffs, under the "moving target" type tactics shown at the 11th hour by their attorneys was substantially justified. This is shown by the fact that, despite undersigned counsel and Ms. Manuel's assertions in the proces verbal that the agreement was not as recitated in the after-hours email "summarizing" the agreements as plaintiffs contend, but also due to the fact that the "agreement" between the parties morphed yet again on the morning of the deposition to refuse to provide the plaintiffs' current work addresses, as well.

Plaintiffs contend that under Rule 30, undersigned counsel should have simply "noted his objection" and proceeded with the deposition. However, what plaintiffs' counsel fails to

acknowledge is that the starting of the deposition would have, in all likelihood, been futile, due to plaintiffs' counsel's ability, under Rule 30(d)(2), to instruct their clients not to answer, to present the current motion under Rule 30(d)(3), **and we would be at the same exact place we are now – arguing the merits of whether plaintiffs' refusal to provide their current work and home addresses should be limited to "Attorneys' Eyes Only," or kept as "Confidential Information" as the parties originally agreed to on the June 12, 2012 telephone conference**. The same expense would have been incurred in either instance. For plaintiffs' counsel to argue that starting the deposition (only to have it stopped so this motion could be brought) versus no deposition at all as being violative of the Rules of Procedure is disingenuous, considering the history of the talks immediately prior to the beginning of defendants' attempt to conduct a meaningful deposition.

To state that undersigned counsel had "no basis" to halt the deposition prior to it starting ignores the history of the good faith efforts, attempts, telephone calls, and informal verbal agreements to which plaintiffs' counsel took the liberty of unilaterally changing over the period of 5-12 hours. These "moving target" tactics should not be sanctioned by this Honorable Court, nor should they be awarded with an award of attorney's fees and/or costs.

Furthermore, should this Honorable Court impose an award, defendants request the opportunity to traverse any evidence of attorneys' fees and costs presented, as plaintiffs had two attorneys and a legal assistant present. Having three people attend one person's deposition cannot be deemed a "reasonable" attorney's fee or cost in this case. Defendants also wish to traverse any evidence presented as to who paid what costs plaintiffs now seek. Additionally, any such attorney's fee should be cut, since these depositions will be rescheduled and the work spent preparing for the

depositions that did not occur will not have to be wholly repeated. *Rushing v. Board of Supervisors of University of Louisiana System*, 270 F.R.D. 259 (M.D. La. 2010).

## III.    **CONCLUSION**

For the reasons set forth above, defendants pray that plaintiffs' Motion for Protective Order and Costs be denied, that if any protection is given to plaintiffs' current immigration status, employment location, and/or home address, that it covered by the parties' oral agreement on June 12, 2012, and be considered "Confidential Information" and not "Attorneys' Eyes Only" as now suggested by plaintiffs.

AND FOR ALL JUST AND EQUITABLE RELIEF, ETC.

BORNE & WILKES, L.L.C.

BY:    _____S/John F. Wilkes, III_____
JOHN F. WILKES, III (Bar Roll #01644), T.A.
JOY C. RABALAIS (Bar Roll #26476)
RAY F. LUCAS, III (Bar Roll #27558)
ERIN N. HARGRAVE (Bar Roll #32459)
TONYA R. SMITH (Bar Roll #30065)
200 West Congress Street, Suite 1000
Post Office Box 4305
Lafayette, Louisiana 70502-4305
Telephone: (337) 232-1604 Ext. 201
Facsimile: (337) 232-1837
E-mail: wilkes@bornewilkes.com

ATTORNEYS FOR ROBERT MCGEE,
INDIVIDUALLY; LUCAS LAVERGNE,
INDIVIDUALLY; and the TOWN OF MAMOU

<u>CERTIFICATE</u>

I HEREBY CERTIFY that on July 5, 2012, a copy of the foregoing Memorandum in Opposition to Motion for Protective Order and Costs was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Mr. Jose J. Behar, Ms. Nancy Picard, Mr. Matthew J. Piers, Ms. Juliet Berger-White, Ms. Spring Miller, Ms. Stacie Leigh Jonas, Ms. Caryn C. Lederer, Ms. Maria Manuel, and Mr. Greg Guidry by operation of the court's electronic filing system.

<u>S/John F. Wilkes, III</u>
JOHN F. WILKES, III (Bar Roll #01644)
BORNE & WILKES, L.L.C.
Attorney for Defendants
